UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 07-CR-0223(3) (PJS/JSM) |
| Plaintiff, | |
| v. | ORDER |
| JUAN MANUEL ESTRADA, | |
| Defendant. | |

Katharine T. Buzicky, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Juan Manuel Estrada, pro se.

Defendant Juan Manuel Estrada is serving a 360-month sentence after being convicted of conspiring to distribute methamphetamine. This matter is before the Court on Estrada's motion to modify his sentence under 18 U.S.C. § 3582(c)(1)(A). ECF No. 236. For the reasons that follow, the Court denies the motion.

I.  LEGAL FRAMEWORK

Under § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

The Sentencing Commission has issued U.S.S.G. § 1B1.13, a policy statement that governs motions under § 3582(c)(1)(A). Because § 1B1.13 was issued when the Bureau of Prisons ("BOP") had the sole authority to bring motions for release under § 3582(c)(1)(A), the guideline by its terms is limited to motions filed by the BOP. As a result, a number of circuits have held that § 1B1.13 applies only to motions filed by the BOP, and not to motions filed by defendants on their own behalf. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).

The Eighth Circuit has not resolved this issue, but the court has recently clarified that although district courts should not treat § 1B1.13 as binding, they may not ignore it altogether. *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021). This holding accords with this Court's approach of affording deference to § 1B1.13's definition of "extraordinary and compelling." *See United States v. Logan*, 532 F. Supp. 3d 725, 730 (D. Minn. 2021). Accordingly, while the Court recognizes that it has the discretion to grant a sentence reduction even in circumstances that do not comport with the terms of § 1B1.13, the Court continues to treat § 1B1.13 as a useful guide in determining whether and how to exercise its discretion.

II.  ANALYSIS

*A.  Extraordinary and Compelling Reasons*

Estrada argues that his "high risk medical conditions"—which he says "greatly increase his risk of infection and serious or deadly complications of COVID-19"—provide extraordinary and compelling reasons for his release, especially when considered in light of his "high risk of contracting the COVID-19 virus or one of its variants" and his "post-conviction rehabilitation."  ECF No. 236 at 10.  The Court disagrees.

1.  Medical Conditions

Estrada claims that he suffers from diabetes, hypertension, obesity, hepatitis C, and neuropathy.  *Id.* at 9.  His medical records show that he has type-2 diabetes, hypertension, obesity, and chronic hepatitis C.  ECF No. 242 at 97–99.  But the most recent medical records before the Court (dated June 15, 2021) show that his blood pressure was "controlled at 127/86" after he was prescribed a new blood-pressure medication.  *Id.* at 10.  He is technically obese, but only slightly, with a body-mass index ("BMI") of 33.2.  *See id.* at 19 (weight was 252 pounds in April 2021); *id.* at 161 (height is 73 inches); Ctrs. for Disease Control & Prevention, *Adult BMI Calculator* (Sept. 17, 2020), https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator

/bmi_calculator.html (enter 6 feet 1 inch for height and 252 pounds for weight).[1]  His chronic hepatitis C is in remission, and three separate tests have detected no quantifiable amount of the hepatitis C virus after Estrada underwent a two-month course of medication for the disease in late 2019 and early 2020.  ECF No. 242 at 98–99.  And his records provide no evidence that he suffers from neuropathy; the only mention of that condition is as a possible consequence of his ongoing noncompliance with his diabetes treatment.  *Id.* at 170; *see also id.* at 144, 162 (documenting findings in two encounters in 2020 that Estrada's cranial nerves are within normal limits and that he exhibits no "headache, dizziness, syncope, paralysis, ataxia, numbness or tingling in the extremities," or "change in bowel or bladder control").

Aside from those controlled, minor, or unsubstantiated health concerns, Estrada does identify one salient COVID-19 risk factor: his diabetes.[2]  But two factors

---

[1] An adult with a BMI of at least 30 is obese. Ctrs. for Disease Control & Prevention, *Defining Adult Overweight & Obesity* (June 7, 2021), https://www.cdc.gov/obesity/adult/defining.html.  Obesity can be subdivided into the following categories, listed in order of increasing severity: Class 1 (BMI at least 30 but less than 35), Class 2 (BMI at least 35 but less than 40), and Class 3 or "severe" obesity (BMI at least 40).  Thus, Estrada's BMI of 33.2 puts him in the least severe class.

[2] Ctrs. for Disease Control & Prevention, *People with Certain Medical Conditions* (Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19.").

substantially reduce the risk from COVID-19 posed by his diabetes, and a third factor related to his diabetes risk is entirely within his own control.

First, Estrada has received both doses of the Pfizer COVID-19 vaccine. *Id.* at 135–36. The available evidence shows that the Pfizer vaccine is very effective,[3] even against the currently prevalent Delta variant, and it is expected to be effective against the recently identified Omicron variant as well.[4] And "courts have found that a risk of serious complications from COVID-19 is not extraordinary and compelling when experienced by a vaccinated inmate." *United States v. Cesario*, No. 14-CR-0092 (PJS/TNL), 2021 WL 2201550, at *1 (D. Minn. June 1, 2021); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").

Second, despite Estrada's dramatic (and wholly unsupported) assertion that "[i]nfections at FCC-Hazelton have exploded," ECF No. 236 at 5, the evidence available

---

[3] Ctrs. for Disease Control & Prevention, *Pfizer-BioNTech COVID-19 Vaccine Overview and Safety* (Nov. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (reporting that the vaccine was 95% effective in preventing infection during clinical trials and reduces the risk of COVID-19, including severe illness, by at least 90% in real-world conditions).

[4] Ctrs. for Disease Control & Prevention, *What You Need to Know About Variants* (Dec. 1, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html; *see also United States v. Derden*, No. 12-CR-0012 (PJS/SER), 2021 WL 3721848, at *2 (D. Minn. Aug. 23, 2021) (discussing the Moderna vaccine).

to the Court shows that only nine inmates (out of a total of 3328) and two staff members at FCC Hazelton have active COVID-19 infections; at the same time, at least 537 staff members and 2574 inmates there are fully vaccinated against the disease.[5] So there is not an outbreak at Hazelton, and the likelihood that an outbreak will occur is greatly diminished.

Third, Estrada does not take responsibility for managing his own health. In particular, he does not take his insulin doses as required for treating his diabetes. In April 2021, Estrada was a no-show for 12 out of 30 morning insulin doses (40% of his morning doses). ECF No. 242 at 12. The previous month, he missed 13 out of 31 evening insulin doses. *Id.* at 23. (He had the same problem with treating a recent relapse of his hepatitis C—medical staff had to prescribe Estrada nine more days of medicine because he did not comply with his treatment regimen. *Id.* at 98, 174.) As has been explained to Estrada in "several sessions" of counseling, reminders, and warnings, *id.* at 159, "[h]e will most likely suffer many health problems" if he does not control his glucose levels with insulin, *id.* at 168. Those likely health problems include "[cardiovascular] disease, stroke, loss of limbs, neuropathies, and sexual dysfunction."

---

[5] Fed. Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 2, 2021). Note that FCC Hazelton comprises both FCI Hazelton and USP Hazelton. For those facilities' individual population figures, see Fed. Bureau of Prisons, *FCI Hazelton*, https://www.bop.gov/locations/institutions/haf/ (last visited Dec. 2, 2021), and Fed. Bureau of Prisons, *USP Hazelton*, https://www.bop.gov/locations/institutions/haz/ (last visited Dec. 2, 2021).

*Id.* at 170. He has repeatedly "voiced understanding" and "states he will improve compliance," *id.*; *see also id.* at 163, 168, but, as his March and April pill-line records show, he still does not take his condition seriously.

Thus, to the extent that Estrada suffers severe complications resulting from his diabetes—regardless of whether they stem from COVID-19—he is responsible for them. And there is no reason for the Court to believe that Estrada will continue even his current mediocre compliance with treatment if he leaves prison. Were he released, he would likely become *more* susceptible to severe diabetes-related complications from COVID-19 than he is now. That likelihood undercuts his argument that he needs to leave prison to avoid dying from COVID-19.

## 2. Other Purported Reasons

Next, Estrada argues that his postconviction rehabilitation provides an extraordinary and compelling reason for his release. ECF No. 236 at 9–10; ECF No. 244 at 1, 5, 7. But aside from claiming to have completed an unspecified "drug program," ECF No. 236 at 9, and a conclusory assertion that his "time behind bars and his most recent conduct have shown he is no longer a threat to society or public safety," ECF No. 244 at 5, Estrada makes little attempt to prove his purported rehabilitation. In fact, his disciplinary record suggests that he is *not* rehabilitated. He has incurred at least eight disciplinary violations while in federal prison; six of those are from his current

prison term; five of those are from the last three years; and four of *those* are for "possessing a hazardous tool." ECF No. 242 at 1–3. And, even were he rehabilitated, "rehabilitation alone is not an extraordinary and compelling reason for release." *Derden*, 2021 WL 3721848, at *3 n.7 (citing 28 U.S.C. § 994(t)). "[R]ehabilitation is supposed to be the rule, not the exception." *Logan*, 532 F. Supp. 3d at 739.

Finally, Estrada takes issue with his conditions of confinement. ECF No. 236 at 3–5. But those conditions affect all inmates in his facility and therefore do not provide a particularized reason for release under § 3582(c)(1)(A). *See Cesario*, 2021 WL 2201550, at *2 (rejecting similar argument about FCI Oxford). Further, if Estrada wishes to challenge the conditions of his confinement, he must do so in a *Bivens* action filed in the federal district in which he is confined. *See id.* at *2 n.4; *United States v. Spencer*, No. 07-CR-0174(1) (JRT/JJG), 2021 WL 849565, at *1 n.1 (D. Minn. Mar. 5, 2021).

In short, none of Estrada's reasons for release—whether considered individually or collectively—is extraordinary or compelling.

### B. The § 3553(a) Factors

Even *had* Estrada provided an extraordinary and compelling reason for his release, the Court would nevertheless deny his motion because the § 3553(a) factors weigh heavily against his release. As the Court noted at his sentencing hearing, Estrada's 30-year sentence was necessary "to deter [him] from committing further

crimes" and "to protect the public from [him]." ECF No. 145 at 23–24. Not only was his offense serious, but it was the latest in a "string of serious offenses, most involving illegal drugs" that he committed after entering the United States illegally—multiple times. *Id.* at 24. He has repeatedly lied to law enforcement and flouted the law. *Id.* He even assaulted corrections staff while he awaited sentencing. *Id.*

The Court certainly agrees with Estrada that he should not be judged as though he were "frozen in time" at the moment of his sentencing. ECF No. 244 at 5 (emphasis omitted). But Estrada has given the Court little reason to view him as changed in any significant way. In particular, Estrada has given the Court little reason to doubt that, if he were to be released from custody, he would once again return to the United States illegally and once again engage in illegal drug-trafficking.

When the Court looks to Estrada's recent conduct, the Court finds it to actually weigh against his release. Given that Estrada has done a poor job taking care of his own health, the Court is skeptical of his ability to be the "primary caregiver for 8 children that will reside with him" after his release. ECF No. 236 at 9. Moreover, if Estrada cannot manage his own health in a highly regulated prison environment, there is no reason to think that he would obtain his "needed medical care" while living legally in Mexico or illegally in the United States. *See* 18 U.S.C. § 3553(a)(2)(D). And Estrada continues to violate prison rules by repeatedly possessing hazardous tools. ECF

No. 242 at 1–2.  The Court does not believe that releasing him now would "promote respect for the law," "afford adequate deterrence to criminal conduct," or "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(A)–(C).

In sum, because Estrada has shown no extraordinary or compelling reason to release him and because the § 3553(a) factors counsel against doing so, the Court denies his motion.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Estrada's motion for compassionate release [ECF No. 236] is DENIED.

Dated:  December 2, 2021	s/Patrick J. Schiltz
	Patrick J. Schiltz
	United States District Judge